**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-23889-RAR

REUVEN DESSLER and NAOMI DESSLER,

Plaintiffs,

*vs.*

THE TOWERHOUSE CONDOMINIUM, INC.,

Defendant.

# FIRST AMENDED COMPLAINT

Plaintiffs REUVEN DESSLER and NAOMI DESSLER, by their attorneys Timothy W. Schulz, P.A., and Storzer & Associates, P.C. (admitted *pro hac vice*) hereby complain of Defendant THE TOWERHOUSE CONDOMINIUM, INC., pursuant to the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617, 42 U.S.C. § 1982, and the Florida Fair Housing Act, Florida Statute § 760.23, as follows:

## INTRODUCTION

1. This action is commenced by Plaintiffs to redress violations of their civil rights, as protected by the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604 and 3617, 42 U.S.C. § 1982, and the Florida Fair Housing Act ("FFHA"), Florida Statutes § 760.23, caused by the Defendant's refusal to provide Plaintiffs Reuven Dessler and Naomi Dessler reasonable accommodations and modifications for their disabilities and their discrimination against Plaintiffs on the basis of disability, race and religion by failing to allow them the use of an elevator to enter and exit their

home and common areas located at the TOWERHOUSE CONDOMINIUM, INC. Building on the Jewish Sabbath and holidays, motivated by an intent to exclude Orthodox Jews from the Building.

2. Plaintiffs Reuven Dessler and Naomi Dessler are disabled, elderly individuals, and religious Orthodox Jews, who reside at Apartment Residence No. 602 (the "Unit"), a condominium on the sixth floor of the Towerhouse Condominium Building located at 5500 Collins Ave, Miami, FL 33140 ("Building").

3. According to their deeply held, sincere religious beliefs, Plaintiffs are forbidden from operating an elevator on the Jewish Sabbath (Friday evening through Saturday evening) and on Jewish holidays. Plaintiffs have held these religious beliefs at all times relevant to this action.

4. Due to his disability, Plaintiff Reuven Dessler has great difficulty walking up or down the steps from their residence on the sixth floor to exit the Building.

5. Due to her disability, Plaintiff Naomi Dessler is unable to walk up or down the steps from their residence to exit the Building unassisted.

6. If Plaintiffs are inside the Building when the Sabbath or a Jewish holiday begins, they are effectively trapped in their Unit on the sixth floor of the Building, and have great difficulty attending synagogue, visiting friends, or participating in any activity outside of their Unit.

7. If Plaintiffs are outside the Building when the Sabbath or a Jewish holiday begins, they are unable to re-enter their dwelling and access many portions of the Building's common use areas.

8. Plaintiffs requested and offered to pay for an existing elevator to be programmed in a simple manner that would allow them to utilize it on the Sabbath and Jewish holidays.

9. Acting out of fear that the elevator re-programming would attract more religious Orthodox Jews to the Building, the Defendant refused this reasonable accommodation of Plaintiffs' disabilities to facilitate their religious exercise.

10. This failure to accommodate Plaintiffs' disabilities and religious exercise occurred despite the Defendant previously modifying their elevator policy to permit dogs to use the non-service elevators when they were previously forbidden, in order to accommodate individuals who require an emotional support animal.

**PARTIES**

11. Plaintiff REUVEN DESSLER is an individual who at all times relevant to the within action resided at 5500 Collins Ave, Unit 602, Miami, Florida 33140.

12. Plaintiff NAOMI DESSLER is an individual who at all times relevant to the within action resided at 5500 Collins Ave, Unit 602, Miami, Florida 33140.

13. Defendant THE TOWERHOUSE CONDOMINIUM, INC. is a Florida domestic corporation and the condominium association for the Building with a principal address of 5500 Collins Avenue, Miami Beach, Florida 33140 ("Association").

14. The Association operates and maintains the common use spaces in the Building including a gym, mailroom, lobby and pool area that are available for use by members of the Association.

15. The Association is subject to the federal Fair Housing Act, 42 U.S.C. §§ 3604 and 3617, and the Florida Fair Housing Act, Florida Statutes § 760.23.

16. Pursuant to the Association's by-laws, the Association is governed by a Board of Directors (the "Board").

17. The Board is responsible for making reasonable rules and regulations governing the common elements, Association property and for the use and occupancy of the Units.

18. The Board, including its Officers and Directors, is an agent of the Association and at all times herein acted within the scope of their agency to manage the property and business of the Association.

19. The Board has sole discretion over requests for reasonable accommodations and/or modifications of its policies.

## JURISDICTION AND VENUE

20. The subject matter jurisdiction of this Court is founded upon 28 U.S.C. § 1331 (federal question jurisdiction) in that this action is brought under 42 U.S.C. § 3604, 42 U.S.C. § 3617, and 42 U.S.C. § 1982. This Court also has supplemental jurisdiction over Counts XII through XX under 28 U.S.C. § 1367(a) for the claims under Florida law.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that all of the events giving rise to the claims herein occurred in this district and the Defendant is subject to personal jurisdiction in this District as of the commencement of this action.

## FACTUAL ALLEGATIONS

### Plaintiffs' Need For an Accommodation and/or Modification

22. Plaintiffs purchased Apartment Residence No. 602 ("Unit") in the Building on April 30, 2018, through a limited liability company, FPI Collins Holdings, LLC.

23. The Desslers own the Unit through this entity.

24. Upon purchase of the Unit, from May 1, 2018 until shortly thereafter, the Desslers resided in the Unit in the Building and then vacated the same to accommodate renovations at the Unit.

25. In late 2021 and continuing until the present, the Desslers resided in the Unit in the Building.

26. As owners and residents, Plaintiffs are subject to the Association's rules, regulations, and policies.

27. Plaintiff Reuven Dessler is 78 years old, and suffers from a diagnosed medical disability.

28. Plaintiff Naomi Dessler is 75 years old, and suffers from a diagnosed medical disability.

29. Because of their disabilities, among other limitations, Plaintiffs are significantly restricted in their mobility, which includes an inability to walk for more than brief periods of time.

30. Plaintiffs cannot ascend or descend more than a few stairs at a time without great difficulty.

31. Plaintiff Reuven Dessler's disability substantially limits one or more of major life activities, including walking, standing, and performing tasks that require extended mobility.

32. Plaintiff Naomi Dessler's disability substantially limits one or more of major life activities, including walking, standing, and performing tasks that require extended mobility.

33. Both Plaintiffs occasionally require mobility aids, such as a cane.

34. As a result of their age and respective disabilities, Plaintiffs have great difficulty navigating the stairs from their residence on the sixth floor in order to enter or exit the Building independently without the use of an elevator.

35. Plaintiff Reuven Dessler can currently manage the steps with great physical difficulty.

36. Plaintiff Naomi Dessler cannot manage the steps unassisted.

37. Plaintiffs are therefore both dependent on the Building's elevators to enter and exit their residence.

38. Upon information and belief, the Building has three elevators, all of which can be physically accessed, operated, and used by Plaintiffs to enter or exit the Building.

39. Plaintiffs are religious Orthodox Jews.

40. Plaintiffs observe the Jewish Sabbath.

41. Plaintiffs' sincerely held Orthodox Jewish beliefs prohibit them from operating electronic devices on the Sabbath or Jewish holidays, including the controls of elevators.

42. Pushing a manual call button for an elevator either completes or breaks an electric circuit. Plaintiffs' sincerely held religious beliefs prohibit them from creating or breaking electric circuits on the Sabbath and Jewish holidays.

43. In a digital system, activating a call button results in the recording of electronic data in the system. Plaintiffs' sincerely held religious beliefs prohibit them from recording electronic data on the Sabbath and Jewish holidays.

44. In both types of systems, activating a call button results in the elevator responding to the signal and rising or descending to the signaling floor. Plaintiffs' sincerely held religious beliefs prohibit them from doing actions on the Sabbath or Jewish holidays that cause an electric device to operate on the Sabbath or Jewish holidays for their benefit.

45. Operating the buttons or digital display within the elevator to select a destination floor would be prohibited for the Plaintiffs for the same reasons as operating the call button is prohibited.

46. Plaintiffs' sincerely held religious beliefs also prohibit them from asking a Building staff member or resident to activate the call button or select a destination floor on their behalf during the Sabbath or Jewish holiday because this request still causes an electric device to operate for their benefit.

47. The Orthodox Union Shabbat Guide, which the Desslers believe that they must follow, states "[y]ou may not have him or her [a non-Jew] push the [elevator] button for a different floor for you."

48. Plaintiffs therefore cannot use the elevators as currently programmed on the Sabbath or Jewish holidays due to their sincerely held religious beliefs.

49. If Plaintiff Naomi Dessler wishes to enter or exit the Building, she must be assisted by Plaintiff Reuven Dessler, who himself struggles greatly on the stairs due to his age and disability.

50. Traveling up or down the stairs has become a grueling ordeal for the Plaintiffs, with Reuven struggling greatly to assist Naomi up and down six stories of stairs.

51. If Plaintiffs are inside the Building when the Sabbath or a Jewish holiday begins, Plaintiffs are therefore effectively trapped in their Unit for the duration of the Sabbath (25 hours) and Jewish holidays, and have great difficulty attending synagogue, visiting friends, or participating in any activity outside of their Unit.

52. Due to their physical disabilities, Plaintiffs cannot visit friends and family outside the Building or on other floors of the Building, attend gatherings or meals outside their floor, enjoy

any of the Building's common use spaces, or engage in any routine life activity on the Sabbath or Jewish holidays without great pain and difficulty.

53. On some occasions, Plaintiffs have been forced to find other places to stay for the Sabbath because they cannot manage the steps and cannot stay in the Unit for the duration of the Sabbath or Jewish holidays.

54. If Plaintiffs are outside the Building when the Sabbath or a Jewish holiday begins, Plaintiffs are therefore effectively trapped outside their residence for the duration of the Sabbath (25 hours) and Jewish holidays, and are unable to re-enter their dwelling and access many portions of the Building's common use areas including a lobby, mailroom, gym and pool area.

55. During the Sabbath and Jewish holidays, Plaintiffs are unable to access, use, and enjoy common use spaces located on floors that need elevator service that are open to other residents such as a lobby, mailroom, gym and pool area.

56. If a Shabbos elevator is programmed, Plaintiffs are qualified, ready, willing, and able to use the facilities consistent with the Building's terms, policies, and procedures.

57. Plaintiffs' difficulty with exiting and entering their residence in the Building also interferes with their religious observance.

58. Plaintiff Reuven Dessler believes he has a religious obligation to pray three times a day: a morning prayer, an afternoon prayer, and an evening prayer.

59. Orthodox Jewish beliefs, shared by Mr. Dessler, require a quorum of ten men (known as a *minyan*) to engage in certain crucial portions of the prayer services called a minyan.

60. Mr. Dessler believes in Orthodox Judaism's great value to pray together with a *minyan* whenever possible, and he believes that if he is unable to pray with a *minyan* he has missed a vital element of prayer.

61. Recitation of the *kaddish* doxology, a core declaration of the Jewish faith and the sanctification of God's name, can only be recited with a *minyan*.

62. Plaintiff Reuven Dessler believes that his recitation of the *kaddish* on the anniversary of a family member's death (a *yahrtzeit*) is a source of great merit for the deceased.

63. Mr. Dessler can only recite the *kaddish* on a *yahrzeit* in the presence of a *minyan*.

64. A prayer leader's public repetition of certain sections of the prayers can only be recited in the presence of a *minyan*.

65. Plaintiffs believe that listening to the prayer leader's public repetition of the prayers is an essential part of their prayers.

66. Furthermore, the *kedusha* prayer, which Plaintiffs understand to be a sacred recitation of angelic praises of God, may only be recited during the prayer leader's public repetition.

67. Plaintiffs believe that reciting the *kedusha* prayer is an essential part of their religious obligations.

68. The weekly Torah portion is read on Sabbath from a Torah scroll in the presence of a *minyan*.

69. Plaintiffs believe this Torah reading was ordained by Moses to be conducted every Saturday, and attending this Torah reading is an essential part of their religious obligations.

70. Plaintiffs have no access to a Torah scroll outside of the synagogue.

71. Plaintiffs have no access to a prayer *minyan* without leaving the building to attend synagogue.

72. If a *yahrzeit* of one of his parents fell out on a Saturday or Jewish holiday, Plaintiff Reuven Dessler would have great difficulty attending synagogue to recite the *kaddish*, thereby depriving his parent of an eternal spiritual benefit.

73. Even if Plaintiffs could somehow convince a *minyan* to regularly join them in their residence, Plaintiffs are unable to do so because the Condominium Declaration specifically and discriminatorily prohibits them from doing so: "Neither the Common Elements (including Limited Common Elements) nor any Unit may be used as a house of worship, or for religious services or religious teaching gatherings."

74. There is no such prohibition on residents engaging in comparable secular gatherings such as lectures, classes, poker games, book clubs, or other gatherings.

**Defendant's Discriminatory Denial of Plaintiffs' Request**

75. The Defendant could reasonably accommodate Plaintiffs' disabilities by modifying the programming of one of the three existing Building elevators to function as a "Shabbos elevator."

76. Shortly after moving into the Building, and again upon assuming residency and occupancy in the Building in late 2021, Plaintiffs contacted the Building management and then-Board members to request that one of the existing elevators be programmed as a "Shabbos elevator" to accommodate their disabilities.

77. As the name indicates, a Shabbos elevator is programmed to allow for use by religious Orthodox Jews on the Sabbath and Jewish holidays.

78. The programming sets the elevator to run a "route," stopping on predetermined floors for predetermined times.

79. At each stop, the elevator doors open and close for a set amount of time, allowing those unable to interact with the elevator's controls due to their Orthodox Jewish beliefs to enter the elevator and then exit at their pre-programmed stop.

80. A Shabbos elevator's programming may also disable certain internal lights, sensors, or controls.

81. This allows Sabbath-observant Jews, or any other person whose religion forbids them from controlling electronic devices, activating sensors, or the like, to use the elevator.

82. One of the Building's elevators can easily be programmed to continuously stop on every floor, a combination of floors, or only specific floors at specific times.

83. The Shabbos elevator reprogramming can be applied to any one of the Building's existing elevators at a minimal cost.

84. Upon information and belief, a quote for approximately $4,500.00 for the elevator reprogramming was obtained by the Building maintenance worker.

85. There are no maintenance costs associated with reprogramming.

86. The Defendant is aware of the minimal cost of programming a Shabbos elevator.

87. On February 11, 2022, Plaintiffs emailed an offer to bear the entire cost of the reprogramming, together with other Orthodox Jewish residents.

88. The reprogramming, if necessary, can be scheduled for limited times resulting in negligible impacts to the routine operations of the elevator.

89. Elevators that are programmed to run as Shabbos elevators are common in the Miami area, and the programming is well-tested technology.

90. Many buildings near the Building have Shabbos elevators that run with no problems.

91. Other Orthodox Jews reside in the Building and are also prevented from using the Building elevators on the Sabbath and Jewish holidays.

92. The reasonable accommodation and modification requested by Plaintiffs would have enabled Plaintiffs, and the other Orthodox Jewish residents of the Building, to use and enjoy their residences in the Building.

93. The reasonable accommodation and modification requested by Plaintiffs would have alleviated the effects of Plaintiffs' mobility impairments and addressed the mobility needs created by Plaintiffs' inability to enter and exit their residence and common areas through climbing the stairs.

94. The Defendant did not previously act on the request for reprogramming the elevator, and instead continued a pattern of delaying and stonewalling Plaintiffs' requests.

95. Initially, the Defendant stated that all elevators were needed due to "construction" taking place in the Building.

96. In fact, no construction took place on the Jewish Sabbath, the only time the accommodation and modification were requested aside from Jewish holidays.

97. Plaintiffs repeatedly approached the Board and Building management over the years, asking for the Shabbos elevator.

98. Once the aforementioned construction was completed, the Defendant's purported justification for not providing a Shabbos elevator changed to the service elevators being needed for occupants in their swimsuits to travel to the Building's pool.

99. At the time the Defendant proffered this reason, the Building's pool was not in operation, and as of the time of this filing, is still not in operation.

100. Furthermore, although Building rules officially prohibit residents in swimsuits from using the main elevators, the same rule also prohibited pets from the main elevators until the Board amended the rule on June 12, 2025.

101. Peter Lash is an individual with an address of 5500 Collins Avenue, Unit 2003, Miami Beach, Florida 33140. At all times relevant, Lash was the President of the Board.

102. Upon information and belief, Lash informed a Building resident that the reason for the Defendant's refusal to provide a Shabbos elevator was: "Residents don't want to change the tenor of the building."

103. Upon information and belief, the resident understood that the "change in tenor" meant an increase in religious Jews moving into the Building, and that the Association feared that the presence of a Shabbos elevator in the Building would attract more Orthodox Jewish individuals to reside in the Building.

104. The statement from Lash clearly expressed a discriminatory motivation by the Association, through its Board, to exclude Orthodox Jews from the Building.

105. Upon information and belief, during a monthly Board call, a woman stated "these religious Jews, they always make up things, every single time it's a different excuse."

106. Upon information and belief, during a recent Board meeting, a representative of KW Property Management & Consulting, the entity that manages the Building, raised the topic of the within lawsuit and its expense, including the $35,000.00 it must spend to "defend against the Desslers' lawsuit."

107. Upon information and belief, several other residents of the Building spoke at that recent board meeting, stating "I don't want anything religious or Jewish in this building,", that many other area buildings do have Shabbat elevators, and why don't "[they] just move there."

108. Reprogramming one elevator as a Shabbos elevator for occasional times throughout the day would not interfere with other residents' ability to travel through the Building.

109. On August 9, 2024, Plaintiffs' counsel sent a letter to the Association citing its obligations under state and federal law, and again requesting that the Association program one of the elevators as a Shabbos elevator.

110. On August 22, 2024, counsel for the Association requested the legal basis for the request for accommodation and modification.

111. Plaintiffs' counsel responded detailing the statutory and constitutional basis for accommodation of Plaintiffs' needs.

112. On August 30, 2024, counsel for the Association stated that "the Board's position is unchanged, . . . ."

113. No change has been made to the Building's elevators in response to Plaintiffs' requests.

114. Instead, the Association opted to completely ignore this reasonable request, thereby maintaining a status quo and refusing to program a Shabbos elevator.

115. Defendant's refusal was not based on any valid reason.

116. Communications among Board Members reveal their decision-making motivations as far back as 2019, with respect to the Shabbos elevator.

117. On August 28, 2019, a Sabbath-observant resident emailed a Board member and copied the former President of the Board.

118. The email emphasized the need for a Shabbos elevator, which "would alleviate concerns for the now more than 20 sabbath observant families that are in our building."

119. The email further suggested that the existing service elevator be used for the purpose, as it is rarely used on Saturdays and is already installed with 'Sabbath mode.'

120. In response to the email, another Board member responded that "I think (resident) is right and his suggestion solves the problem."

121. Following receipt of the email, another Board member inquired whether the Board Members "think there is any political capital to be mined from this elevator request to guarantee the passage of the upcoming SA, by working with the Observant leadership in the building prior to the 19th? 20 votes?"

122. Refusing to provide a Shabbos elevator, the Defendant instead stated that it would provide an individual at scheduled times to push the elevator button for the Plaintiffs on Shabbos and Jewish holidays for purposes of attending synagogue.

123. This is not a reasonable accommodation, as it effectively traps the Plaintiffs in their Unit on these days and makes them dependent upon a third party individual to enter and leave their Unit and/or the Building.

124. This does not reasonably accommodate other needs of the Plaintiffs that may arise to access and leave their Unit, other areas of the Building, or public spaces on Shabbos and Jewish holidays, which cannot be scheduled.

125. On December 28, 2019, a resident sent an email to Board members, explaining that "the current plan to provide security personnel assistance in lieu of an elevator does not work."

126. Despite the resident reminding security personnel that he and his wife needed assistance, their pickup was forgotten.

127. The resident further shared that he would be selling his unit at the Building at the earliest opportunity and would share his frustrations with prospective buyers in the area.

128. Responding to other Board members with respect to that resident's complaint, a Board member admitted that "we have a human failure again on our part, as it pertains to the (complaining residents)," and that the board member believes security should send an apology to the resident.

129. On February 11, 2022, Plaintiffs emailed an offer to the Building email account, to bear the entire cost of the reprogramming, together with other Orthodox Jewish residents.

130. On February 16, 2022, following receipt of the payment offer email from Plaintiffs, the Building sent an email to Board members, sharing links to several websites with titles such as "Orthodox Jewish tenants sue building," "Kept from keeping sabbath", and "Miami Condos with Shabbat Elevators."

131. In February 2025, Plaintiffs filed a complaint with the Florida Commission on Human Rights ("FCHR").

132. The FCHR conducted an investigation and issued a determination of no cause for Florida Statutes §§ 760.23(2), 760.23(8), and 760.23(9). However, the FCHR did not investigate claims under 42 U.S.C. §§ 3604(a), (b), and (f); 42 U.S.C. § 3617; 42 U.S.C. § 1982, and Florida Statutes § 760.23(1).

133. A Shabbos elevator is an amenity that would be particularly attractive to Orthodox Jewish residents.

134. Upon information and belief, buildings that have Shabbos elevators attract Orthodox Jewish residents.

135. Upon information and belief, the lack of a Shabbos elevator operates as a redlining rule with respect to the ability of the Plaintiffs or any owner to sell to observant Orthodox Jews. No such person could buy a Unit at the Building.

**Defendant's Actions Have a Disparate Impact on Orthodox Jews**

136. The Association's elevator policy inflicts a disparate impact on Orthodox Jews, who are unable to take the stairs and cannot press the elevator call button or allow another person to press the button for them.

137. The Association's ongoing refusal to program a Shabbos elevator causes a disproportionately adverse effect on Plaintiffs and disabled Orthodox Jewish communities because they are denied entry and exit to their Unit and the common use areas during the Sabbath and Jewish holidays.

138. There is no legitimate rationale for the refusal to program a Shabbos elevator.

139. Upon information and belief, housing options for Orthodox Jews are significantly more restrictive than for persons outside that group.

140. The ongoing refusal to program a Shabbos elevator predictably will deter other Orthodox Jews from living in the Building and result in under-representation of that group in the Building's population.

141. Upon information and belief, at least one local real estate agent does not bring religiously observant Orthodox Jewish families to the Building due to the lack of a Shabbos elevator.

**Defendant Changed the Elevator Policy to Accommodate Pets but Refuse to Accommodate Orthodox Jews**

142. Prior to June 12, 2025, the Association's elevator policy limited dogs to the service elevator and prohibited guests from bringing dogs into the Building.

143. This was due to residents' discomfort, fear, and concern about dogs jumping, licking, or entering the personal space of residents while in the elevator.

144. On June 12, 2025, the Association updated their elevator policy to allow residents to bring pets, including emotional support animals, onto any elevator – not just the service elevator.

145. The Association also updated their elevator policy to allow guests to the Building to bring pets into any elevator – not just the service elevator.

146. Such pets that are now permitted onto the Building's elevators are not limited to emotional support animals.

147. Additionally, the Association waived the previous 35-pound limitation on pet weight.

148. The Association's stated reasons for updating the elevator policy included accommodating disabled residents' rights, under Florida law, to have an emotional support animal.

149. The Association has proven their willingness to accommodate individuals with emotional support animals with respect to the use of the Building's elevators.

150. The Association remains staunchly unwilling to accommodate Orthodox Jewish individuals with disabilities with respect to the use of the Building's elevators

151. Emotional support dogs (and their owners) now have greater access to the Building's elevators than disabled Orthodox Jewish residents.

152. Plaintiffs have suffered the deprivation of their statutory rights.

153. Plaintiff Reuven Dessler was 71 years old when he first requested a reasonable accommodation and modification. His disability, including mobility impairments, have only increased over the past six years. He is now 78 years old.

154. Plaintiff Naomi Dessler was 69 years old when she first requested a reasonable accommodation and modification. Her disability, including mobility impairments, have only increased over the past six years. She is now 75 years old.

155. As a direct consequence of the Association's refusal to program a Shabbos elevator, Plaintiffs and other religious Orthodox Jews who reside or visit the Building, are denied full use and enjoyment of the Building on the Jewish Sabbath and Jewish holidays.

156. The Defendant was aware of the Plaintiffs' mobility impairments which significantly limit one or more major life activities and religion at the time the request for accommodation was made.

157. Defendant's denial and continued refusal of Plaintiffs' request for a reasonable accommodation and modification for their disabilities and religious exercise is motivated solely out of discriminatory religious animus against Orthodox Jews.

158. Plaintiffs have suffered damages as a result of the Defendant's actions.

159. The Defendant's actions severely impede and prevent the Plaintiffs' religious exercise.

160. The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendant's wrongful laws and actions.

## COUNT I
## Fair Housing Act
## Discrimination on the Basis of Disability
## 42 U.S.C. § 3604(f)

161. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

162. The Defendant, through its actions and the actions of its agents described above, is liable under 42 U.S.C. § 3604(f), which applies to handicapped individuals and makes it unlawful to "discriminate against any persons in the terms, conditions, or privilege of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of

a handicap . . . ." or to "discriminate in the sale of rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap."

163. Section 3604(f) defines discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

164. Section 3604(f) also defines discrimination to include "a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such [handicapped] person if such modifications may be necessary to afford such person full enjoyment of the premise."

165. Plaintiffs Reuven Dessler and Naomi Dessler are handicapped as defined by the FHA. *See* 42 U.S.C. § 3602(h).

166. The Defendant is aware of Plaintiffs' mobility impairments which substantially limits one or more of major life activities, including walking, standing, and performing tasks that require extended mobility.

167. Plaintiffs requested a reasonable accommodation which neither imposes undue financial and administrative burdens nor requires a fundamental alteration in the nature of the elevator program.

168. The requested accommodation is necessary to afford Plaintiffs an equal opportunity to use and enjoy their dwelling and the Building's common areas.

169. The Defendant has refused to make Plaintiffs' requested accommodation.

170. The Defendant has discriminated against Plaintiffs on the basis of their disabilities.

171. The Defendant has denied Plaintiffs Reuven Dessler and Naomi Dessler the use and enjoyment of the Building on the Jewish Sabbath and Jewish holidays.

172. As a result of the Defendant's actions, Plaintiffs have suffered and continue to suffer deprivation of their statutory rights.

**COUNT II**
**Fair Housing Act**
**Discrimination on the Basis of Race**
**42 U.S.C. § 3604(a)**

173. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

174. The Defendant, through its actions and the actions of its agents described above, is liable under 42 U.S.C. § 3604(a), which makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."

175. Section 3604(a) reaches post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner.

176. The Plaintiffs are members of the Jewish race.

177. The actions by the Defendant in violation of the Plaintiffs' housing rights have made unavailable or denied a dwelling to Plaintiffs because of their Jewish race and constitute discrimination on the basis of race in violation of 42 U.S.C. § 3604(a). The Defendant's actions have resulted in and continue to result in disparate treatment of the Plaintiffs.

178. The individual plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3604(i), and they have suffered harm, damage, and injury as a result of Defendant's conduct.

179. Plaintiffs have no adequate remedy at law for such harm, damage, and injury caused by the Defendant's conduct.

180. The Defendant has caused the Plaintiffs to sustain and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of their residence located in the Building and the Building's common areas, as guaranteed by the Fair Housing Act.

181. Plaintiffs will continue to suffer such harm unless the Defendant's acts and conduct complained of are permanently enjoined.

## COUNT III
## Fair Housing Act
## Discrimination on the Basis of Religion
## 42 U.S.C. § 3604(a)

182. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

183. The Defendant, through its actions and the actions of its agents described above, is liable under 42 U.S.C. § 3604(a), which makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."

184. Section 3604(a) reaches post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner.

185. Plaintiffs are members of the Orthodox Jewish religion.

186. The actions by the Defendant in violation of the Plaintiffs' housing rights have made unavailable or denied a dwelling to Plaintiffs because of their Orthodox Jewish religion and constitute discrimination on the basis of religion in violation of 42 U.S.C. § 3604(a). The Defendant's actions have resulted in and continue to result in disparate treatment of the Plaintiffs.

187. The individual plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3604(i), and they have suffered harm, damage, and injury as a result of Defendant's conduct.

188. Plaintiffs have no adequate remedy at law for such harm, damage, and injury caused by the Defendant's conduct.

189. The Defendant has caused the Plaintiffs to sustain and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of their residence located in the Building and the Building's common areas, as guaranteed by the Fair Housing Act.

190. Plaintiffs will continue to suffer such harm unless the Defendant's acts and conduct complained of are permanently enjoined.

**COUNT IV**
**Fair Housing Act**
**Discrimination on the Basis of Race**
**42 U.S.C. § 3604(b)**

191. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

192. The Defendant, through its actions and the actions of its agents described above, is liable under 42 U.S.C. § 3604(b), which prohibits "discriminatory housing practices," including discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

193. Section 3604(b) also prohibits discrimination in the provision of "services" that are connected to the sale of a dwelling, including services provided post-acquisition.

194. When a "condition" of purchase is that owners subject themselves to the Condominium Association, section 3604(b) prohibits the Association from discriminating against Plaintiffs through the Association's rules and policies.

195. For Plaintiffs, who are disabled and cannot take the stairs, a Shabbos elevator is a basic utility which is inextricably intertwined with the dwelling and fundamental to Plaintiffs' ability to inhabit the Unit.

196. Plaintiffs are members of the Jewish race.

197. The actions by the Defendant in violation of the Plaintiffs' housing rights in the provision of services or facilities in connection with the sale or rental of a dwelling because of Plaintiffs' Jewish race constitutes discrimination on the basis of race in violation of 42 U.S.C. § 3604(b). They have resulted in and continue to result in disparate treatment of the Plaintiffs.

198. The individual plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3604(i), and they have suffered harm, damage, and injury as a result of Defendant's conduct.

199. Plaintiffs have no adequate remedy at law for such harm, damage, and injury caused by Defendant's conduct.

200. The Defendant has caused the Plaintiffs to sustain and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of their residence located in the Building and the Building's common areas, as guaranteed by the Fair Housing Act.

201. Plaintiffs will continue to suffer such harm unless the Defendant's acts and conduct complained of are permanently enjoined.

**COUNT V**
**Fair Housing Act**
**Discrimination on the Basis of Religion**
**42 U.S.C. § 3604(b)**

202. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

203. The Defendant, through its actions and the actions of its agents described above, is liable under 42 U.S.C. § 3604(b), which prohibits "discriminatory housing practices," including discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

204. Section 3604(b) also prohibits discrimination in the provision of "services" that are connected to the sale of a dwelling, including services provided post-acquisition.

205. When a "condition" of purchase is that owners subject themselves to the Condominium Association, section 3604(b) prohibits the Association from discriminating against Plaintiffs through the Association's rules and policies.

206. For Plaintiffs, who are disabled and cannot take the stairs, a Shabbos elevator is a basic utility which is inextricably intertwined with the dwelling and fundamental to Plaintiffs' ability to inhabit the Unit.

207. Plaintiffs are members of the Orthodox Jewish religion.

208. The actions by the Defendant in violation of the Plaintiffs' housing rights in the provision of services or facilities in connection with the sale or rental of a dwelling because of Plaintiffs' Orthodox Jewish religion constitutes discrimination on the basis of religion in violation of 42 U.S.C.§ 3604(b). They have resulted in and continue to result in disparate treatment of the Plaintiffs.

209. The individual plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3604(i), and they have suffered harm, damage, and injury as a result of Defendant's conduct.

210. Plaintiffs have no adequate remedy at law for such harm, damage, and injury caused by Defendant's conduct.

211. The Defendant has caused the Plaintiffs to sustain and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of their residence located in the Building and the Building's common areas, as guaranteed by the Fair Housing Act.

212. Plaintiffs will continue to suffer such harm unless the Defendant's acts and conduct complained of are permanently enjoined.

**COUNT VI**
**Fair Housing Act**
**Disparate Impact**
**42 U.S.C. § 3604(a) and (b)**

213. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

214. Defendant's elevator policy (on their face and as applied to Plaintiffs) and actions have had the effect and continue to have the effect, whether intended or not, of excluding Plaintiffs from accessing their Unit and common areas during the Sabbath and Jewish holidays by discriminating against the Plaintiffs based on religion and race in the terms, conditions, or privileges of a sale or rental of a dwelling, in violation of 42 U.S.C. § 3604(b), and by otherwise making unavailable or denying a dwelling to Plaintiffs based on religion and race in violation of 42 U.S.C. § 3604(a).

215. The Defendant's elevator policy disparately impacts the Plaintiffs, who require a Shabbos elevator to enter and exit their Unit and Building common areas during the Sabbath and Jewish holidays.

216. Plaintiffs are members of the Orthodox Jewish religion and the Jewish race.

217. The individual plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3604(i), and they have suffered harm, damage, and injury as a result of Defendant's conduct.

218. Plaintiffs have no adequate remedy at law for such harm, damage, and injury caused by Defendant's conduct.

219. The Defendant has caused the Plaintiffs to suffer, and continue to suffer irreparable harm, damage, and injury, and Plaintiffs will continue to suffer such harm unless the Defendant's acts and conduct complained of are permanently enjoined.

**COUNT VII**
**Fair Housing Act**
**Disparate Impact**
**42 U.S.C. § 3604(f)**

220. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

221. Defendant's elevator policy (on its face and as applied to Plaintiffs) and actions have had the effect and continue to have the effect, whether intended or not, of excluding Plaintiffs from accessing their Unit and common areas during the Sabbath and Jewish holidays by discriminating against the Plaintiffs based on disability in the terms, conditions, or privileges of a sale or rental of a dwelling, in violation of 42 U.S.C. § 3604(f).

222. The Defendant's elevator policy disparately impacts the Plaintiffs, who require a Shabbos elevator to enter and exit their Unit and Building common areas during the Sabbath and Jewish holidays, as compared to non-disabled individuals.

223. The individual plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3604(i), and they have suffered harm, damage, and injury as a result of Defendant's conduct.

224. Plaintiffs have no adequate remedy at law for such harm, damage, and injury caused by Defendant's conduct.

225. The Defendant has caused the Plaintiffs to suffer, and continue to suffer irreparable harm, damage, and injury, and Plaintiffs will continue to suffer such harm unless the Defendant's acts and conduct complained of are permanently enjoined.

## COUNT VIII
## Fair Housing Act
## Discriminatory Statement
## 42 U.S.C. § 3604(c)

226. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

227. Defendant, through its actions and the actions of its agents described above, is liable under § 3604(c) which prohibits the "mak[ing] . . . any . . . statement . . . with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination" based on protected grounds including race and religion.

228. The Plaintiffs are members of the Jewish race and the Orthodox Jewish religion.

229. Lash stated that the reason for the Defendant's refusal to provide a Shabbos elevator was: "Residents don't want to change the tenor of the building."

230. Lash's statement was made with respect to the sale of dwellings.

231. Lash's statement indicated a preference for non-Orthodox Jewish residents, thus discriminating on the basis of race and religion.

232. The Association is responsible for the actions of its agent in furtherance of this violation, including the statement of Lash.

**COUNT IX**
**Fair Housing Act**
**Discrimination on the Basis of Race**
**42 U.S.C. § 3617**

233. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

234. Defendant, through its actions and the actions of its agents described above, is liable under 42 U.S.C. § 3617 which makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604 . . . of this title." This provision extends to interference "with persons in their enjoyment of a dwelling because of race." 24 C.F.R. § 100.400(c)(2).

235. Plaintiffs are members of the Jewish race.

236. Defendant's discrimination against Plaintiffs because of their Jewish race has interfered with Plaintiffs' enjoyment of their dwelling and common areas in the Building.

237. The individual Plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3604(i), and they have suffered harm, damage, and injury as a result of Defendant's conduct.

238. Plaintiffs have no adequate remedy at law for such harm, damage, and injury caused by Defendant's conduct.

239. Defendant has caused the Plaintiffs to sustain and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of their residence located in the Building and the Building's common areas, as guaranteed by the Fair Housing Act.

240. Plaintiffs will continue to suffer such harm unless the Defendant's acts and conduct complained of are permanently enjoined.

**COUNT X**
**Fair Housing Act**
**Discrimination on the Basis of Religion**
**42 U.S.C. § 3617**

241. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

242. Defendant, through its actions and the actions of its agents described above, is liable under 42 U.S.C. § 3617 which makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604 . . . of this title." This provision extends to interference "with persons in their enjoyment of a dwelling because of . . . religion." 24 C.F.R. § 100.400(c)(2).

243. Plaintiffs are members of the Orthodox Jewish religion.

244. Defendant's discrimination against Plaintiffs because of their Orthodox Jewish religion has interfered with Plaintiffs' enjoyment of their dwelling and common areas in the Building.

245. The individual Plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3604(i), and they have suffered harm, damage, and injury as a result of Defendant's conduct.

246. Plaintiffs have no adequate remedy at law for such harm, damage, and injury caused by Defendant's conduct.

247. Defendant has caused the Plaintiffs to sustain and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of their residence located in the Building and the Building's common areas, as guaranteed by the Fair Housing Act.

248. Plaintiffs will continue to suffer such harm unless the Defendant's acts and conduct complained of are permanently enjoined.

**COUNT XI**
**42 U.S.C. § 1982**
**Discrimination on the Basis of Race**

249. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

250. Defendant, through its actions and the actions of its agents described above, is liable under 42 U.S.C. § 1982, which guarantees that "[a]ll citizens of the United States shall have the same right, in every State and Territory . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." This provision broadly prohibits discrimination in the use and enjoyment of property rights and extends to discrimination against Jews.

251. The Plaintiffs are members of the Jewish race.

252. The actions by the Defendant are violations of Plaintiffs' right to own, use, and enjoy real property, as is enjoyed by white citizens, in violation of 42 U.S.C. § 1982.

253. Defendant's racial discrimination against Plaintiffs was intended to and has interfered with the rights and benefits connected to Plaintiffs' ownership and use of property and property rights. The Association's refusal to provide a reasonable accommodation has prevented Plaintiffs from using and enjoying their dwelling apartment and Building facilities on equal terms

with non-Jewish residents and owners. The Association's refusal to provide a reasonable accommodation also hinders Plaintiffs ability to sell their property to observant Orthodox Jews.

254. Plaintiffs have been damaged as a result of Defendant's actions, including the ongoing burden to its civil rights, as secured by 42 U.S.C. § 1982. The Plaintiffs will continue to suffer such harm unless the Defendant's acts and conduct complained of are permanently enjoined.

**COUNT XII**
**Florida Fair Housing Act**
**Discrimination on the Basis of Race**
**Fla. Stat. § 760.23(2)**

255. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

256. Defendant, through its actions and the actions of its agents described above, is liable under the Florida Fair Housing Act ("FFHA") § 760.23(2), which makes it unlawful to discriminate "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, national origin, sex, disability, familial status, or religion."

257. Plaintiffs are members of the Jewish race.

258. The actions by the Defendant in violation of the Plaintiffs' housing rights in the provision of services or facilities in connection with the sale or rental of a dwelling because of Plaintiffs' Jewish race constitutes discrimination on the basis of religion in violation of Florida Statutes § 760.23(2). They have resulted in and continue to result in disparate treatment of the Plaintiffs.

259. Plaintiffs have sustained and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of the subject property, as guaranteed by the Florida Fair Housing Act.

260. As a result of Defendant's actions, Plaintiffs have suffered and continue to suffer deprivation of their statutory rights.

**COUNT XIII**
**Florida Fair Housing Act**
**Discrimination on the Basis of Disability**
**Fla. Stat. § 760.23(2)**

261. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

262. Defendant, through its actions and the actions of its agents described above, is liable under the Florida Fair Housing Act ("FFHA") § 760.23(2), which makes it unlawful to discriminate "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, national origin, sex, disability, familial status, or religion."

263. Plaintiffs Reuven Dessler and Naomi Dessler are disabled as defined by the Florida Fair Housing Act. See Fla. Stat. § 760.22(3)(a).

264. For Plaintiffs, who are disabled and cannot take the stairs, a Shabbos elevator is a basic utility which is inextricably intertwined with the dwelling and fundamental to Plaintiffs' ability to inhabit the Unit.

265. The actions by the Defendant in violation of the Plaintiffs' housing rights in the provision of services or facilities in connection with the sale or rental of a dwelling because of Plaintiffs' disability constitutes discrimination on the basis of religion in violation of Florida Statutes § 760.23(2). They have resulted in and continue to result in disparate treatment of the Plaintiffs.

266. Plaintiffs have sustained and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of the subject property, as guaranteed by the Florida Fair Housing Act.

267. As a result of Defendant's actions, Plaintiffs have suffered and continue to suffer deprivation of their statutory rights.

## COUNT XIV
## Florida Fair Housing Act
## Discrimination on the Basis of Religion
## Fla. Stat. § 760.23(2)

268. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

269. Defendant, through its actions and the actions of its agents described above, is liable under the Florida Fair Housing Act ("FFHA") § 760.23(2), which makes it unlawful to discriminate "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, national origin, sex, disability, familial status, or religion."

270. Plaintiffs are members of the Orthodox Jewish religion.

271. The actions by the Defendant in violation of the Plaintiffs' housing rights in the provision of services or facilities in connection with the sale or rental of a dwelling because of Plaintiffs' Orthodox Jewish religion constitutes discrimination on the basis of religion in violation of Florida Statutes § 760.23(2). They have resulted in and continue to result in disparate treatment of the Plaintiffs.

272. Plaintiffs have sustained and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of the subject property, as guaranteed by the Florida Fair Housing Act.

273. As a result of Defendant's actions, Plaintiffs have suffered and continue to suffer deprivation of their statutory rights.

**COUNT XV**
**Florida Fair Housing Act**
**Failure to Grant Reasonable Modification**
**Fla. Stat. § 760.23(8) and § 760.23(9)(a)**

274. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

275. Defendant, through its actions and the actions of its agents described above, is liable under Florida Statutes § 760.23(8), which applies to handicapped individuals and makes it unlawful to "discriminate against any persons in the terms, conditions, or privilege of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, . . . ."

276. Defendant, through its actions and the actions of its agents described above, is liable under Florida Statutes § 760.23(9)(a), which defines discrimination to include "a refusal to permit, at the expense of the person with a disability, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises."

277. Plaintiffs Reuven Dessler and Naomi Dessler are disabled as defined by the Florida Fair Housing Act. See Fla. Stat. § 760.22(3)(a).

278. Defendant is aware of Plaintiffs' mobility impairments which substantially limit one or more major life activities including walking, standing, and performing tasks that require extended mobility.

279. Defendant has denied Plaintiffs Reuven Dessler and Naomi Dessler the use and full enjoyment of the Building on the Jewish Sabbath and Jewish holidays.

280. Plaintiffs requested a reasonable modification, at their own expense.

281. The requested modification is necessary to afford Plaintiffs full enjoyment of the premises.

282. Defendant has refused to permit Plaintiffs' requested reasonable modification. Defendant has discriminated against Plaintiffs on the basis of their disabilities.

283. As a result of Defendant's actions, Plaintiffs have suffered and continue to suffer deprivation of their statutory rights.

## COUNT XVI
## Florida Fair Housing Act
## Failure to Grant Reasonable Accommodation
## Fla. Stat. § 760.23(8) and § 760.23(9)(b)

284. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

285. Defendant, through its actions and the actions of its agents described above, is liable under Florida Statutes § 760.23(8), which applies to handicapped individuals and makes it unlawful to "discriminate against any persons in the terms, conditions, or privilege of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, . . . ."

286. Defendant, through its actions and the actions of its agents described above, is liable under Florida Statutes § 760.23(9)(b), which defines discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

287. Plaintiffs Reuven Dessler and Naomi Dessler are disabled as defined by the Florida Fair Housing Act. See Fla. Stat. § 760.22(3)(a).

288. Defendant is aware of Plaintiffs' disabilities which significantly limit one or more major life activities including walking, standing, and performing tasks that require extended mobility.

289. Defendant has denied Plaintiffs Reuven Dessler and Naomi Dessler the use and enjoyment of the Building on the Jewish Sabbath and Jewish holidays.

290. Plaintiffs requested a reasonable accommodation that neither imposes undue financial and administrative burdens nor requires a fundamental alteration in the nature of the elevator program.

291. The requested accommodation is necessary to afford Plaintiffs an equal opportunity to use and enjoy their dwelling and the Building's common areas.

292. Defendant has refused to reasonably accommodate Plaintiffs' disabilities.

293. Defendant has discriminated against Plaintiffs on the basis of their disabilities.

294. As a result of Defendant's actions, Plaintiffs have suffered and continue to suffer deprivation of their statutory rights.

**COUNT XVII**
**Florida Fair Housing Act**
**Discrimination on the Basis of Race**
**Fla. Stat. § 760.23(1)**

295. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

296. Defendant, through its actions and the actions of its agents described above, is liable under Florida Statutes § 760.23(1), which makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, national origin sex, disability, familial status, or religion."

297. Plaintiffs Reuven Dessler and Naomi Dessler are disabled as defined by the Florida Fair Housing Act. See Fla. Stat. § 760.22(3)(a).

298. Plaintiffs are members of the Jewish race.

299. The actions by the Defendant in violation of the Plaintiffs' housing rights have made unavailable or denied a dwelling to Plaintiffs because of their Plaintiffs' Jewish race and constitute discrimination on the basis of race in violation of Florida Statutes § 760.23(1). Defendant's actions have resulted in and continue to result in a disparate treatment of the Plaintiffs.

300. Plaintiffs have sustained and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of their residence located in the Building and the Building's common areas, as guaranteed by the Florida Fair Housing Act.

301. As a result of Defendant's actions, Plaintiffs have suffered and continue to suffer deprivation of their statutory rights.

**COUNT XVIII**
**Florida Fair Housing Act**
**Discrimination on the Basis of Disability**
**Fla. Stat. § 760.23(1)**

302. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

303. Defendant, through its actions and the actions of its agents described above, is liable under Florida Statutes § 760.23(1), which makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, national origin sex, disability, familial status, or religion."

304. Plaintiffs Reuven Dessler and Naomi Dessler are disabled as defined by the Florida Fair Housing Act. See Fla. Stat. § 760.22(3)(a).

305. The actions by the Defendant in violation of the Plaintiffs' housing rights have made unavailable or denied a dwelling to Plaintiffs because of Plaintiffs' disability constitutes

discrimination on the basis of disability in violation of Florida Statutes § 760.23(1). Defendant's actions have resulted in and continue to result in a disparate treatment of the Plaintiffs.

306. Plaintiffs have sustained and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of their residence located in the Building and the Building's common areas, as guaranteed by the Florida Fair Housing Act.

307. As a result of Defendant's actions, Plaintiffs have suffered and continue to suffer deprivation of their statutory rights.

**COUNT XIX**
**Florida Fair Housing Act**
**Discrimination on the Basis of Religion**
**Fla. Stat. § 760.23(1)**

308. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

309. Defendant, through its actions and the actions of its agents described above, is liable under Florida Statutes § 760.23(1), which makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, national origin sex, disability, familial status, or religion."

310. Plaintiffs are members of the Orthodox Jewish religion.

311. The actions by the Defendant in violation of the Plaintiffs' housing rights have made unavailable or denied a dwelling to Plaintiffs because of Plaintiffs' Orthodox Jewish religion constitutes discrimination on the basis of religion in violation of Florida Statutes § 760.23(1). Defendant's actions have resulted in and continue to result in a disparate treatment of the Plaintiffs.

312. Plaintiffs have sustained and continue to sustain direct injuries including, but not limited to, being barred from the full use and enjoyment of their residence located in the Building and the Building's common areas, as guaranteed by the Florida Fair Housing Act.

313. As a result of Defendant's actions, Plaintiffs have suffered and continue to suffer deprivation of their statutory rights.

**COUNT XX**
**Florida Fair Housing Act**
**Discriminatory Statement**
**Fla. Stat. § 760.23(3)**

314. Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

315. Defendant, through its actions and the actions of its agents described above, is liable under Florida Statutes § 760.23(3) which prohibits the "mak[ing] . . . any . . . statement . . . with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, national origin, sex, disability, familial status, or religion or an intention to make any such preference, limitation, or discrimination."

316. Plaintiffs Reuven Dessler and Naomi Dessler are disabled as defined by the Florida Fair Housing Act. See Fla. Stat. § 760.22(3)(a).

317. Plaintiffs are members of the Jewish race.

318. Plaintiffs are members of the Orthodox Jewish religion.

319. Lash stated that the reason for the Defendant's refusal to provide a Shabbos elevator was: "Residents don't want to change the tenor of the building."

320. Lash's statement was made with respect to the sale of dwellings.

321. Lash's statement indicated a preference for non-Orthodox Jewish residents, thus discriminating on the basis of disability, race and religion.

322. The Association is responsible for the actions of its agent in furtherance of this violation, including the statement of Lash.

## RELIEF SOUGHT

**WHEREFORE**, the Plaintiffs, Reuven and Naomi Dessler, respectfully request that this Court grant the following relief:

a. A declaration that Defendant's actions constitute discrimination on the basis of race, religion, and disability and an interference with Plaintiffs' rights under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604 and § 3617, 42 U.S.C. § 1982, and the Florida Fair Housing Act ("FFHA");

b. A temporary and permanent injunction requiring the Defendant to program one elevator in the Building to function as a "Shabbos elevator" in a manner that allows Plaintiffs to enter and exit their Unit and common areas in the Building at reasonable times throughout the Jewish Sabbath and Jewish holidays.

c. A permanent injunction prohibiting Defendant from unlawfully interfering with the Plaintiffs' use or enjoyment of their property rights on the basis of race, religion, or disability;

d. An award to Plaintiffs of full costs, disbursements and attorneys' fees, to the extent permitted by law, arising out or in connection with Defendant's actions and out of this litigation;

e. An award to Plaintiffs of nominal, compensatory and punitive damages; and

f. Granting such other, further and different relief as to this Court deems just, proper and equitable.

Dated: March 16, 2026

Respectfully submitted,

/s/Timothy W. Schulz
Timothy W. Schulz
Bar Number #73024
schulzt@twslegal.com
Timothy W. Schulz, P.A.
330 Clematis St, Suite 116
West Palm Beach, FL 33401
Tel: (561) 659-1167
Fax: (561) 659-1168

/s/Roman P. Storzer
Roman P. Storzer (admitted pro hac vice)
Sieglinde K. Rath (admitted pro hac vice)
storzer@storzerlaw.com
rath@storzerlaw.com
Storzer & Associates, P.C.
1025 Connecticut Avenue
Suite One Thousand
Washington, D.C. 20036
Tel: (202) 857-9766
Fax: (202) 315-3996

*Attorneys for Plaintiffs*

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all issues to which a jury is permitted.

Dated: March 16, 2026

Respectfully submitted,

**TIMOTHY W. SCHULZ, P.A.**

/s/Timothy W. Schulz
Timothy W. Schulz
Bar Number #73024
schulzt@twslegal.com
330 Clematis St, Suite 116
West Palm Beach, FL 33401
Tel: (561) 659-1167
Fax: (561) 659-1168

**STORZER & ASSOCIATES, P.C.**

/s/Roman P. Storzer
Roman P. Storzer (admitted pro hac vice
Sieglinde K. Rath (admitted pro hac vice)
storzer@storzerlaw.com
rath@storzerlaw.com
1025 Connecticut Avenue
Suite One Thousand
Washington, D.C. 20036
Tel: (202) 857-9766
Fax: (202) 315-3996

*Attorneys for Plaintiffs*