**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-23889-RAR**

**REUVEN DESSLER,** *et al.*,

      Plaintiffs,

v.

**THE TOWERHOUSE**
**CONDOMINIUM, INC.,**

      Defendant.

_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

This case presents the interplay between purported disability discrimination under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and a demand for religious accommodation under the statute.  The FHA addresses several protected categories—race, color, religion, sex, handicap, familial status, and national origin.  These categories do not always present themselves in isolation; individuals may have more than one protected characteristic, and the challenged conduct may implicate different sections of FHA.  But to ensure the protections provided by Congress are properly applied, the statutory text must be carefully parsed to prevent the FHA from being expanded beyond its plain meaning.

Here, Defendant seeks to limit the FHA from being rewritten to accommodate Plaintiffs' theory of disability discrimination.  Before the Court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint with Prejudice ("Motion"), [ECF No. 44], filed on April 6, 2026.  The Court has reviewed the Amended Complaint, [ECF No. 38]; Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("Response"), [ECF No. 45]; Defendant's Reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("Reply"), [ECF No. 48]; and

heard oral argument on the Motion on July 13, 2026 ("Hearing"), [ECF No. 60]. The Court having carefully considered the relevant submissions and applicable law, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss, [ECF No. 44], is GRANTED IN PART as set forth herein.

## BACKGROUND

Plaintiffs Reuven and Naomi Dessler are an elderly Orthodox Jewish couple who have owned an apartment residence on the sixth floor of the TowerHouse building (the "Building") since 2018. Am. Compl. ¶ 22, 27–28. Defendant, The TowerHouse Condominium, Inc., is the condominium association responsible for the operation and maintenance of the common use spaces in the Building. Am. Compl. ¶¶ 13–14. Plaintiff Reuven Dessler, 78 years old, and Plaintiff Naomi Dessler, 75 years old, both suffer from diagnosed medical disabilities that significantly restrict their mobility, including their ability to navigate the stairs to and from their residence. Am. Compl. ¶¶ 27–29, 34.

The Building has three elevators, all of which Plaintiffs can use to enter or exit the Building. Am. Compl. ¶ 38. However, Plaintiffs' sincerely held religious beliefs prohibit them from undertaking actions on the Sabbath or Jewish holidays that cause an electric device to operate for their benefit, including pushing elevator buttons, or asking someone else to push elevator buttons on their behalf. Am. Compl. ¶¶ 41–46. Therefore, Plaintiffs cannot use the Building's elevators on the Sabbath or Jewish holidays. Am. Compl. ¶ 48. Because "[t]raveling up or down the stairs has become a grueling ordeal for [] Plaintiffs," they are "effectively trapped" in their apartment or outside of their apartment for the duration of the Sabbath and Jewish holidays. Am. Compl. ¶¶ 51–54. Plaintiffs allege that this renders them not only does them unable to access, use, and enjoy

the Building's common spaces, but it also interferes with their religious observance.  Am. Compl. ¶¶ 55–74.

"Shortly after moving into the Building, and again upon assuming residency and occupancy of the Building in late 2021, Plaintiffs contacted the Building's management and then-members of Defendant's Board of Directors to request that one of the existing elevators be programmed as a 'Shabbos elevator'" on the Sabbath and Jewish holidays.  Am. Compl. ¶¶ 76–77.  The Shabbos elevator, as requested by Plaintiffs, would be programmed to automatically stop and open/close on predetermined floors for predetermined times so Sabbath-observant Jews could enter and exit the elevator without pressing any buttons or actively engaging the elevator's electronics.  Am. Compl. ¶¶ 77–82.

On February 11, 2022, Plaintiffs emailed Defendant with an offer to bear, along with other Orthodox Jewish residents, the entire cost of reprogramming the elevator, which was quoted at approximately $4,500.00.  Am. Compl. ¶¶ 83–87.  After Defendant "continued a pattern of delaying and stonewalling Plaintiffs' requests", *see* Am. Compl. ¶ 94, on August 9, 2024, Plaintiffs emailed Defendant "citing its obligations under state and federal law and again requesting that the Association program one of the elevators as a Shabbos elevator."  Am. Compl. ¶ 109.  To date, Defendant has not acted on Plaintiffs' request to program a Shabbos elevator, and Plaintiffs allege that "Defendant's refusal was not based on any valid reason."  Am. Compl. ¶¶ 94–115.

Plaintiffs allege that Defendant's denial and continued refusal of their request for a reasonable accommodation and modification for their disabilities and religious exercise is motivated solely out of discriminatory religious animus against Orthodox Jews.  Am. Compl. ¶ 157.  As evidence of such "discriminatory motivation", Plaintiffs point to a statement made by Peter Lash, President of the Board, who "informed a Building resident that the reason for the

Defendant's refusal to provide a Shabbos elevator was: 'Residents don't want to change the tenor of the building.'" Am. Compl. ¶¶ 101–104.  And Plaintiffs allege other discriminatory statements made by residents of the Building.  Am. Compl. ¶¶ 105, 107.

In February 2025, Plaintiffs filed a complaint with the Florida Commission on Human Rights, which conducted an investigation and issued a determination of no cause for Florida Statutes §§ 760.23(2), 760.23(8), and 760.23(9).  Am. Compl. ¶¶ 131–132  In furtherance of their statutory rights, on August 29, 2025, Plaintiffs filed the instant action, *see* [ECF No. 1], bringing 20 claims alleging various forms of religious, racial, and disability discrimination under the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604, 3617, the Florida Fair Housing Act ("FFHA"), and the Civil Rights Act of 1866, 42 U.S.C. § 1982, stemming from Defendant's refusal of Plaintiffs' request to program a Shabbos elevator.  Am. Compl. ¶¶ 161–322.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiffs receive the benefit of all favorable inferences that can be drawn from the facts alleged.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678.

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits—but may also consider documents that are central to the claim and whose authenticity is undisputed.  *See Johnson v. City of Atlanta,* 107 F.4th 1292, 1300 (11th Cir. 2024).  While the court is required to accept as true all allegations contained in the complaint,

courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

## ANALYSIS

Defendant's Motion seeks to dismiss with prejudice eighteen of the twenty counts asserted in Plaintiffs' Amended Complaint for failure to state a claim. *See generally* Mot. Specifically, Defendant seeks dismissal of Counts I, VII, XIII, XV, XVI, and XVIII because "Plaintiffs improperly attempt to conflate their religious-based request for a Shabbos elevator accommodation with a non-existent disability-related need for such accommodation." Mot. at 3–4. Defendant further alleges that Counts II, IV, VI, IX, XI, XII, and XVII cannot be sustained because "Jews are not a Race under the FHA or FFHA." Mot. at 4–6. Finally, Counts III, V, VI, X, XIV, and XIX, according to Defendant, allege discrimination on the basis of religion but "the FHA and FFHA only require reasonable accommodations for individuals with disabilities [and] [t]here is no requirement to provide reasonable accommodations for religious needs." Mot. at 8–9.

The Court addresses each argument in turn. And because the FHA and FFHA are "substantively identical," the same legal analysis applies to Plaintiffs' FHA and FFHA claims. *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014).

### I. Plaintiffs' Disability Discrimination Claims (Counts I, VII, XIII, XV, XVI, and XVIII)

Counts I and VII allege discrimination on the basis of disability and disparate impact, respectively, under § 3604(f) of the FHA. Am. Compl. ¶¶ 161–172, 220–225. And Counts XIII, XV, XVI, and XVIII allege discrimination on the basis of disability, failure to grant reasonable

modification, and failure to grant reasonable accommodation under §§ 760.23(1), 760.23(2), 760.23(8), and 760.23(9)(a) and (b) of the FFHA. Am. Compl. ¶¶ 261–267, 274–283, 302–307. Under § 3604 of the FHA, it is unlawful to "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of [] that person[.]" 42 U.S.C. § 3604(f)(2)(A). Such discrimination includes "a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises[.]" *Id*. § 3604(f)(3)(A). Put another way, "discrimination under the Fair Housing Act includes a refusal to make a 'reasonable accommodation' for handicapped persons." *Loren v. Sasser*, 309 F.3d 1296, 1302 (11th Cir. 2002) (citing *City of Edmonds v. Oxford House, Inc*., 514 U.S. 725, 729–30 (1995)).

"To prevail on a Section 3604(f)(3)(B) claim, a plaintiff must establish that (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation." *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 467 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218–19 (11th Cir. 2008)).

At this juncture, Plaintiffs have sufficiently alleged that they are disabled or handicapped within the meaning of the FHA. Under the FHA, a person is disabled if he has or is regarded as having "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h)(1). The Amended Complaint alleges that Plaintiffs suffer from a "diagnosed medical disability" which "significantly restrict[s] [] their mobility,

[resulting in] an inability to walk for more than brief periods of time." Am. Compl. ¶¶ 27–29. The Court notes that Plaintiffs could plead their disability with greater specificity. *See Ndimbie v. Sw. Hammocks, LLLP*, No. 25-CV-61125, 2025 WL 2324361, at *4 (S.D. Fla. July 24, 2025), *report and recommendation adopted*, No. 25-61125, 2025 WL 2322445 (S.D. Fla. Aug. 12, 2025) (finding a conclusory allegation that plaintiff is a "disabled individual" is insufficient to state an FHA claim because "Plaintiff does not allege what her disability is and whether it falls within the FHA's definition of disability."). But Defendant concedes "that Plaintiffs are disabled [] for the limited purpose of the Motion to Dismiss and this Reply." Reply at 4 n. 2. Thus, drawing all inferences in favor of Plaintiffs, the Court finds that Plaintiffs have sufficiently alleged that they are disabled within the meaning of the FHA.[1]

Aside from pleading a qualifying disability under prong one, it is also uncontroverted that prongs two and four of Plaintiffs' FHA failure-to-accommodate claim are satisfied: Plaintiffs requested a reasonable accommodation—a Shabbos elevator—and Defendant refused to make the requested accommodation. *See* Am. Compl. ¶¶ 8, 76, 94, 97–8, 109, 112. Thus, the relevant inquiry under the remaining prong is whether a Shabbos elevator is "necessary to afford [Plaintiffs] an opportunity to use and enjoy [their] dwelling." *Hawn*, 347 F. App'x at 467 (citing *Schwarz*, 544 F.3d at 1218–19); *see also Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1227 (11th Cir. 2016) (holding plaintiffs stated a claim for failure to make a reasonable accommodation where reasonable accommodation "was necessary to afford the [plaintiffs] an opportunity to continue to use and enjoy the apartment, yet [defendant] refused to make the accommodation."); *Schaw v. Habitat for Human. of Citrus Cnty., Inc.*, 938 F.3d 1259, 1273 (11th Cir. 2019) ("The inquiry is whether the

---

[1] At oral argument, the Court inquired as to the nature of Plaintiffs' disability and counsel disclosed that Plaintiff Reuven Dessler suffers from Parkinson's Disease and his wife Naomi Dessler also suffers from a disease impacting her mobility. Defense counsel did not contest this assertion. *See* Hearing, [ECF No. 60].

requested accommodation would provide a disabled person an opportunity to enjoy a dwelling that would otherwise—due to his disability—elude him.").

Defendant contends that a Shabbos elevator is not necessary for Plaintiffs to use and enjoy their dwelling, pointing to Plaintiffs' own allegation that the Building "has three elevators, *all of which can be physically accessed, operated, and used by Plaintiffs* to enter or exit the Building." Mot. at 4 (quoting Am. Compl. ¶ 38 (emphasis added)).  They also point to "Plaintiffs['] [] candid[] acknowledge[ment] that 'Plaintiffs' *sincerely held Orthodox Jewish beliefs* prohibit them from operating electronic devices on the Sabbath or Jewish holidays, including the controls of elevators.'"  *Id*. (quoting Am. Compl. ¶ 41 (emphasis added)).  According to Defendant, "Plaintiff's disability does not and would not preclude Plaintiffs from using the elevator."  *Id*. Thus, "[t]here is no nexus between Plaintiffs' disabilities and their need for a Shabbos elevator" because "[b]y their own admission, it is their religious beliefs, not their disability, that preclude them from using the elevators on Shabbat and Jewish holidays."  *Id*.  The Court agrees.

"[E]stablishing an accommodation's necessity requires [] proof the accommodation 'address[es] the needs created by the handicap[.]"  *Bhogaita*, 765 F.3d at 1290 (quoting *Schwarz*, 544 F.3d at 1226).  While "a necessary accommodation is one that alleviates the effects of a disability," *see Schaw*, 938 F.3d at 1269 (internal quotations and citations omitted), there must be "some causal tie" between the disability and that effect.  *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale, Fla*., 46 F.4th 1268, 1280 (11th Cir. 2022).  Plaintiffs maintain that "the effect of [their] disabilities, coupled with their particular circumstance as Sabbath-observant Jews, renders the accommodation of a Shabbos elevator 'necessary.'"  Resp. at 10.

The necessity of Plaintiffs' requested accommodation thus turns on whether the need for a Shabbos elevator is properly considered an effect of Plaintiffs' disability or an effect of their

religion, as Defendant contends.  While the factual circumstances here have not been encountered by the Eleventh Circuit, Plaintiffs analogize to *Schaw* and *Hunt* in support of their position.[2]  A detailed examination reveals that Plaintiffs' reliance on these cases is misplaced.

In *Schaw*, a quadriplegic plaintiff applied for a home with Habitat for Humanity, but his annual social-security-disability income failed to meet the minimum-income threshold.  938 F.3d at 1262.  He therefore asked for an accommodation to allow him to supplement his income computation with either the amount he received in food stamps or a letter memorializing financial support he received from his family.  *Id*.  The Eleventh Circuit explained that "an individual's inability to pay *can* render an otherwise-reasonable accommodation necessary, so long as there is some causal relationship between the disability and the inability to pay.  The proper inquiry is whether a plaintiff's inability to work—and therefore to make enough money to afford a rent increase—is caused in some way by his disability."  *Sailboat Bend Sober Living, LLC.*, 46 F.4th at 1280 (analyzing *Schaw*) (internal quotations and citations omitted).

Similarly, in *Hunt*, a landlord sought to evict a mother and her disabled son (born with Down Syndrome) after the son made violent threats and engaged in other disturbing behavior.  814 F.3d at 1219.  The mother requested that the landlord allow her to find a facility to take care of her son during the day.  *Id.* at 1226.  The Eleventh Circuit found that the complaint adequately pled a reasonable accommodation claim because the requested accommodation "was necessary to eliminate the possibility that [the son] would make perceived threats or engage in other behavior

---

[2]  Plaintiffs' analogy to *Lefkowitz v. Westlake Master Ass'n, Inc.*, No. CV 18-14862, 2019 WL 669806 (D.N.J. Feb. 19, 2019) is likewise unavailing.  This out-of-district case is not binding on this Court, nor does the opinion address whether the proposed accommodation was intended to accommodate religious practice or disability-related limitations.  As Defendant notes, "the portion of the holding cited by Plaintiffs does not even mention the plaintiff's religious beliefs or indicate such beliefs were a factor in the ruling."  Reply at 6.

[resulting from his disability] that frightened or disturbed the [] staff." *Id*. at 1226–27. As in *Schaw*, the requested accommodation was a direct effect of the plaintiff's disability.

Here, Plaintiffs' disability prevents them from taking the stairs, as they are unable to walk without assistance. And they maintain that Defendant's provision of an elevator as a reasonable accommodation is insufficient. Plaintiffs request a Shabbos elevator because their "sincerely held religious beliefs prohibit them from performing actions on the Sabbath or certain Jewish holidays that cause an electric device to operate for their benefit, including pushing an elevator button, or asking someone else to activate the call button or select a destination floor on their behalf." Resp. at 3. Applying the framework set forth by the Eleventh Circuit, this Court asks whether Plaintiffs' inability to take the elevator "is caused in some way by [their] disability." *Sailboat Bend Sober Living, LLC*., 46 F.4th at 1280. It is not. Rather, it is their religious beliefs which make them unable to press the button to call for the elevator; their disability has no impact on their inability to do so. Put another way, Plaintiffs' disability makes an *elevator* necessary; it does not make a *Shabbos elevator* necessary. *See Rood v. Town of Ft. Myers Beach, Fla*., 622 F. Supp. 3d 1217, 1233–34 (M.D. Fla. 2022) ("[T]he requested accommodation did not address the needs created by the' disability . . . Since [plaintiff] did not need a wheelchair accommodation, there was no obligation to provide one." (internal quotations and citations omitted)).

Plaintiffs suggest a reading of *Schaw* and *Hunt* that asks the Court to consider "the effect of Plaintiffs' disabilities, *coupled with* their particular circumstance as Sabbath-observant Jews[.]" Resp. at 10 (emphasis added). This interpretation would effectively unmoor the caselaw from the statutory language of the FHA by reading a religious exception into the statute—a statute that only allows for a reasonable accommodation directly resulting from a disability. Indeed, the FHA requires only those accommodations that "may be *necessary* . . . to afford *equal* opportunity to use

and enjoy a dwelling." *Schwarz*, 544 F.3d at 1226 (quoting 42 U.S.C. § 3604(f)(3)(B)).  As the Eleventh Circuit explained in *Schwarz*, "[i]n this context, 'equal opportunity' can only mean that handicapped people must be afforded the same (or 'equal') opportunity to use and enjoy a dwelling as non-handicapped people, which occurs when accommodations address *the needs created by the handicaps.* If accommodations go beyond addressing these needs and start addressing problems not caused by a person's handicap, then the handicapped person would receive not an 'equal,' but rather a better opportunity to use and enjoy a dwelling, a preference that the plain language of this statute cannot support." *Id*.

Thus, while the Court is sympathetic to the challenges encountered by Plaintiffs in navigating the effects of their disability while adhering to their religious beliefs, it also acknowledges that requiring Plaintiffs' desired accommodation here would open the door for a wider swath of claims under the FHA, thereby expanding the statute well beyond the "equal opportunity" that the text requires.  *See Faller v. Casa Bahia at Westshore Yacht Club Condo. Ass'n, Inc*., No. 8:21-CV-1731-MSS-AAS, 2022 WL 21748026, at *3 (M.D. Fla. Sept. 12, 2022) (finding the complaint failed to state a failure-to-accommodate claim under the FHA because "[t]he request for mold remediation is [] not an accommodation specifically to address the needs of [plaintiff's] autism[.]").

Accordingly, Plaintiffs have failed to allege their requested accommodation is necessary to address their disability.  Defendant's Motion is therefore granted as to Counts I, VII, XIII, XV, XVI, and XVIII.

**II. Plaintiffs' Race Discrimination Claims (Counts II, IV, VI, IX, XI, XII, and XVII)**

Counts II, IV, and VI allege discrimination on the basis of race and disparate impact under §§ 3604(a) and 3604(b) of the FHA.  Am. Compl. ¶¶ 173–181, 191–201, 213–210.  Counts IX and XI allege discrimination on the basis of race under § 3617 of the FHA and 42 U.S.C. § 1982,

respectively.  Am. Compl. ¶¶ 233–240, 249–254.  And Counts XII and XVII allege discrimination on the basis of race under §§ 760.23(2) and 760.23(1), respectively.  Am. Compl. ¶¶ 255–260, 295–301.  The FHA makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer . . . or otherwise make unavailable or deny, a dwelling to any person because of race" and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race[.]" 42 U.S.C. §§ 3604(a)–(b).

Defendant maintains that Jews are not a race under the FHA or FFHA, *see* Mot. at 4–6, while Plaintiffs argue that they are and that "all inferences must be resolved in Plaintiffs' favor regarding ambiguity of the FHA's covered groups."[3]  Resp. at 10–12.  However, the Court need not reach the question of whether Jews are a race under the FHA or FFHA given that Plaintiffs' allegations of racial discrimination are largely unsubstantiated.

Plaintiffs allege that Defendant's actions "have made unavailable or denied a dwelling to Plaintiffs because of their [ ] Jewish race and constitute discrimination on the basis of race[.]"  Am. Compl. ¶ 299.  But Plaintiffs' factual allegations only sustain an inference of Defendant's hostility towards Plaintiffs' Orthodox beliefs; there are no allegations of discrimination relating to "ethnic or ancestry characteristics."  *Shen v. Simpson*, 687 F. Supp. 3d 1219, 1235 (N.D. Fla. 2023) (citing *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll*., 600 U.S. 181, 208 (2023)).  Thus, any alleged discrimination was not *because of race*, but rather due to Plaintiffs'

---

[3]  Defendant specifically relies on *Shaare Tefila Congregation v. Cobb,* which noted that "the question before us is not whether Jews are considered to be a separate race by today's standards, but whether, at the time § 1982 was adopted, Jews constituted a group of people that Congress intended to protect."  481 U.S. 615, 617–18 (1987).  And writing in 1987, the Court found that Jews are "members of what today is considered to be part of the Caucasian race."  *Id*. at 618.  Plaintiffs, however, take issue with Defendant's interpretation of *Shaare Tefila Congregation.*  Resp. at 10–12.

religious beliefs that prohibit them from using electronics to their benefit on Shabbos or the Jewish holidays. Indeed, this religious belief is only held by a subset of Jewish people including Plaintiffs; it is not some stereotype tied to ancestry or ethnicity, nor a characteristic broadly associated with the Jewish identity.

Accordingly, because Plaintiffs fail to plead racial discrimination, Defendant's Motion is granted as to Counts II, IV, VI, IX, XI, XII, and XVII.[4]

### III.   Plaintiffs' Religious Discrimination Claims (Counts III, V, VI, X, XIV, and XIX)

Plaintiffs allege that Defendant discriminated against them on the basis of their religion in violation of § 3604(a), § 3604(b), and § 3617 of the FHA, as well as the identical provisions in the FFHA, by failing to program a Shabbos elevator in the Building. The Court considers each of these claims in turn.

#### a.   42 U.S.C. § 3604(a) (Counts III, VI, and XIX)

In Counts III, VI, and XIX, Plaintiffs allege violations of § 3604(a) of the FHA and the identical provision in the FFHA. Am. Compl. ¶¶ 182–190, 213–219, 308–313. In relevant part, § 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).

As this Court has explained, "Federal Courts have consistently found that section 3604 of the FHA applies only to claims relating to the buying or selling or leasing of housing." *Truesdale*

---

[4] The Court notes that Plaintiffs' race discrimination claims are tied to Defendant's refusal to program a Shabbos elevator, a requested accommodation. Defendant is therefore correct that even if Defendant engaged in race-based discrimination, it is not required to provide race-based reasonable accommodation given that "[t]he only 'reasonable accommodation' requirement is found in the portion of the [Fair Housing] Act addressing discrimination against the handicapped." *Savanna Club Worship Serv., Inc. v. Savanna Club Homeowners' Ass'n, Inc.*, 456 F. Supp. 2d 1223, 1233 (S.D. Fla. 2005).

*v. Venice Arms, Inc.*, 713 F. Supp. 3d 1350, 1355–56 (S.D. Fla. 2024) (internal quotations and citations omitted); *see also Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1143 (S.D. Fla. 2004) (holding that § 3604(a) is "limited to conduct that directly impacts accessibility to housing because of a protected classification" and does not apply to conduct that had no impact on the ability to purchase a home); *Gourlay v. Forest Lake Ests. Civic Ass'n of Port Richey, Inc.*, 276 F. Supp. 2d 1222, 1229–32 (M.D. Fla. 2003), *vacated by settlement*, 2003 WL 22149660 (M.D. Fla. Sept. 16, 2003) (finding that § 3604(a) is limited to conduct that precludes plaintiff's ownership of a dwelling, not to conduct that limits use or enjoyment of said dwelling years after purchase); *Fair Hous. Ctr. of Greater Palm Beaches, Inc. v. Shutters Condo. Ass'n, Inc.*, No. 08-81566, 2009 WL 10667030, at *3 (S.D. Fla. Sept. 11, 2009) (distinguishing § 3604, which applies to the sale or rental of housing, and § 3617, which "may be applied to post-acquisition actions" (internal citations omitted)).

Here, all of Plaintiffs' allegations in support of their claim for relief under § 3604(a) stem from alleged discriminatory conduct that occurred years after Plaintiffs purchased their dwelling. Plaintiffs fail to allege that such conduct related to the buying or selling of their unit.[5]  Plaintiffs

---

[5]  Plaintiffs rely on *Bloch v. Frischholtz*, a Seventh Circuit case, in arguing that "Section 3604(a) 'may reach post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction.'"  Resp. at 14 (quoting *Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir. 2009)).  Not only is this out-of-circuit case not binding on the Court, but an examination of the underlying opinion reveals that Plaintiffs' arguments would fail under the framework set forth in *Bloch*.  In that case, the condominium building enacted a rule (the "Hallway Rule") preventing plaintiffs from displaying mezuzot on their doorposts.  *Bloch*, 587 F.3d at 773.  The Seventh Circuit did not foreclose the possibility that a plaintiff could state a post-acquisition § 3604(a) claim because "[a] defendant can engage in post-sale practices tantamount to 'redlining' that make a plaintiff's dwelling 'unavailable.'"  *Id.* at 777.  But there was "no possibility that a reasonable jury could conclude that the defendants' conduct rendered Shoreline Towers 'unavailable' to the [plaintiffs], which is what § 3604(a) requires."  *Id.* at 778.

Notably, the Court did acknowledge that plaintiffs failed to make a more persuasive argument that the "Hallway Rule [] operates exactly as a redlining rule does with respect to the ability of the owner to sell to observant Jews.  No such person could buy a unit at Shoreline Towers.  The Association might as well hang a sign outside saying, 'No observant Jews allowed.'"  *Id.* at 778–779 (internal quotations and citation omitted).  And "[s]uch a sign would undoubtedly violate § 3604(a)."  *Id.* at 779.

have thus failed to plead sufficient facts show that § 3604(a) applies to their claims.  Accordingly,

Counts III and XIX are dismissed and Count VI is dismissed to the extent that it seeks relief under

§ 3604(a).

### b.   *42 U.S.C. § 3604(b) (Counts V, VI, and XIV)*

In Counts V, VI, and XIV, Plaintiffs allege violations of § 3604(b) of the FHA and the

identical provision in the FFHA.  Am. Compl. ¶¶ 202–212, 213–219, 268–273.  Under § 3604(b)

of the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privi-

leges of sale or rental of a dwelling, or in the provision of services or facilities in connection

therewith, because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. §

3604(b).

Unlike § 3604(a), the Eleventh Circuit has held that § 3604(b) encompasses some post-

acquisition discrimination in the provision of services or facilities, so long as the services or

facilities have a direct connection to the sale of a dwelling.  *Georgia State Conf. of the NAACP v.*

*City of LaGrange, Georgia*, 940 F.3d 627, 632–33 (11th Cir. 2019).  For a service or facility to

have a direct connection to the sale of a dwelling, the service or facility must be (1) "closely tied"

to the sale of a dwelling, and (2) "essential to the habitability of [the] dwelling."  *Id.* at 634.  The

Eleventh Circuit has also held that where, as a condition of purchase, the purchaser "enters into an

enforceable agreement . . . such as [a] mandatory [homeowner's association] contract . . . Section

---

Here, Defendant's failure to install a Shabbos Elevator cannot apply to or operate as a redlining rule impacting Plaintiffs' ability to sell to other observant Jews, as the Hallway Rule in *Bloch* did.  Only individuals who cannot take the stairs are affected.  If anything, *Bloch* illustrates that Plaintiffs are improperly conflating their disability discrimination claims with their religious discrimination claims.

3604(b) prohibits discrimination related to any additional privileges, services, and facilities afforded by that agreement." *Watts v. Joggers Run Prop. Owners Ass'n, Inc.*, 133 F.4th 1032, 1042–43 (11th Cir. 2025).

Here, Plaintiffs argue that Defendant violated § 3604(b) by refusing to program a Shabbos elevator because (1) the Building's "[e]levator service is inextricably intertwined with the dwelling and fundamental to Plaintiffs' ability to inhabit [their unit]," and (2) the fact that Defendant refused to program a Shabbos elevator while agreeing to change the elevator usage rules to allow emotional support animals on all elevators indicates that the refusal to program the Shabbos elevator was done with discriminatory intent. Resp. at 15–17. Plaintiffs' arguments fail for two primary reasons.

*First*, a Shabbos elevator is not properly considered a service or facility closely tied to the sale of a dwelling nor essential to the habitability of a dwelling. As a threshold matter, the relevant service or facility that Plaintiffs allege they are being denied is not "elevator service" generally but rather the programming of a Shabbos elevator. Indeed, as discussed above, Plaintiffs admit that they have access to and can use the Building's three elevators on days other than the Sabbath or Jewish holidays to access their unit. *See* Am. Compl. ¶ 38. Therefore, the relevant inquiry is whether a Shabbos elevator is closely tied to the sale of a dwelling and essential to the habitability of a dwelling. *Georgia State Conf. of the NAACP*, 940 F.3d at 634. A Shabbos elevator clearly falls short of meeting this standard. Unlike basic utility services such as water, gas, and electricity at issue in *Georgia State Conference of the NAACP*, a Shabbos elevator is not a service or facility closely tied to the sale of a dwelling—nor is it one that an individual would naturally expect to find in a building. Alternatively stated, it is not the type of service or facility that would be

"practically impossible . . . to separate [from] the sale or rental of a dwelling[.]."  *Id*. (internal quotation marks omitted).

Nor can a Shabbos elevator be essential to the habitability of a dwelling.  "Habitability" is defined as "the condition of a building in which inhabitants can live free of serious defects that might harm health and safety."  *Id.* (quoting *Black's Law Dictionary* 826 (10th ed. 2014) (cleaned up)).  Thus, unlike water, gas, and electricity, which are "fundamental to the ability to inhabit a dwelling", *see id*., a Shabbos elevator is more properly considered a service or facility that is desirable to Orthodox Jews and would make the Building more attractive to them.

*Second*, even if a Shabbos elevator was a service or facility that was closely tied to the sale of a dwelling and essential to its habitability, Defendant's failure to program a Shabbos elevator does not constitute religious discrimination.  As Defendant correctly notes in its Motion, Plaintiffs' request for a Shabbos elevator is essentially a request for an accommodation based on their religion, which Defendant is not required to provide under the FHA.  *See Savanna Club Worship Serv., Inc.*, 456 F. Supp. 2d at 1233 (holding that the FHA imposes "no 'reasonable accommodation' requirement in the context of religious discrimination").  This is evidenced by the structure of the FHA, which does not impose a reasonable accommodation requirement in § 3604(b), but *does* impose such a requirement in the portion of the Act addressing discrimination against the handicapped.  That section provides, in pertinent part, that it is unlawful

> [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling . . . because of a handicap. . . . *For the purposes of this subsection,* discrimination includes . . . a refusal to make reasonable accommodations in Rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

42 U.S.C. § 3604(f) (emphasis added); *see also Savanna Club Worship Serv., Inc.*, 456 F. Supp. 2d at 1233.  As the court in *Savanna Club Worship Service, Inc.* explained, "Congress would not

have needed to insert the reasonable accommodation language into [S]ection 3604(f) if it had already been encompassed by [other subsections of Section 3604]." 456 F. Supp. 2d at 1233–34. Therefore, by omitting any reasonable accommodation language from § 3604(b), Congress intended that there be no such requirement in the context of religious discrimination. *Id.* at 1234.

Further, the structure of the FHA also indicates that Defendant's failure to provide a religious accommodation, without more, cannot amount to religious discrimination in violation of § 3604(b). By explicitly providing in § 3604(f)(3)(B) that failure to provide a reasonable accommodation for a disability constitutes discrimination, the statute's structure indicates that the FHA uses the word "discrimination" in other provisions of the Act, such as § 3604(b), to mean something different than "failure to accommodate." *See Bloch*, 533 F.3d at 565; *see also Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1267 (11th Cir. 2006) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (citation and quotation omitted)).

Lastly, while modifying the elevator policy to permit service dogs may have been required as a reasonable accommodation for individuals with disabilities, no comparable obligation exists to program a Shabbos elevator to accommodate Plaintiffs' religious beliefs for the reasons identified above. To establish a disparate treatment claim, a plaintiff must "show that [they] ha[ve] actually been treated differently than similarly situated nonhandicapped people[.]" *Schwarz*, 544 F.3d at 1216. But no such averment exists in the Amended Complaint.

The Court thus finds that Plaintiffs have not adequately pleaded a violation of § 3604(b) and Defendant's Motion is granted as to Counts V, VI, and XIV.

### c.   *42 U.S.C. § 3617 (Count X)*

Finally, in Count X of the Amended Complaint, Plaintiffs allege that, because of their Orthodox Jewish religion, Defendant interfered with the enjoyment of their dwelling and the Building's common areas in violation of § 3617 of the FHA.  Am. Compl. ¶¶ 241–248.  § 3617 makes it unlawful:

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected under this section.

42 U.S.C. § 3617.  Notably, this section does not require proof of a violation of §§ 3603–3606 to create liability.  *See Gourlay*, 276 F. Supp. 2d at 1235 (citing *Sofarelli v. Pinellas County*, 931 F.2d 718, 722 (11th Cir. 1991)).  To prove a claim under § 3617, a plaintiff must demonstrate that:

> (1) a defendant coerced, intimidated, threatened or interfered; (2) with a (a) plaintiff's exercise of a right under Sections 3603–3606; (b) plaintiff's enjoyment of a housing right after exercise of that right; or (c) plaintiff's aid or encouragement to a protected person to exercise or enjoy a housing right; (3) because of discriminatory animus.

*Lawrence*, 318 F. Supp. 2d at 1143–44 (quoting *Gourlay*, 276 F. Supp. 2d at 1235).

"[T]he Eleventh Circuit has not prescribed the precise magnitude of conduct required by § 3617."  *Noah v. Assor*, 379 F. Supp. 3d 1284, 1289 (S.D. Fla. 2019) (quoting *Dulworth Family L.P. v. 400 LA Peninsula Condo. Ass'n, Inc.*, No. 2:11–cv–00584–UA–DNF, 2012 WL 11794802, at *3 (M.D. Fla. July 23, 2012)).  However, "district courts in the Eleventh Circuit agree that Section 3617 'extends only to discriminatory conduct so severe or pervasive that it will have the effect of causing a protected person to abandon the exercise of his or her housing rights.'"  *Id.* at 1289 (quoting *Lawrence*, 318 F. Supp. 2d at 1144).  And in the absence of a violation of §§ 3603–3606, the discriminatory conduct "must be pervasive and severe enough to be considered as

threatening or violent." *Lawrence*, 318 F. Supp. 2d at 1145 (citing *Gourlay*, 276 F. Supp. 2d at 1236).

Plaintiffs allege that "Defendant's discrimination against Plaintiffs because of their Orthodox Jewish religion has interfered with Plaintiffs' enjoyment of their dwelling and common areas in the Building" in violation of § 3617.  Am. Compl. ¶ 244.  However, none of the allegations in the Amended Complaint come close to alleging conduct that was so pervasive and severe that it caused Plaintiffs to abandon the exercise of their housing rights—much less conduct that could be considered threatening or violent.  Thus, to survive dismissal, Plaintiffs shall sufficiently demonstrate that the discriminatory conduct was so severe or pervasive that it had the effect of causing Plaintiffs "to abandon the exercise of [their] housing rights." *Noah*, 379 F. Supp. 3d at 1289.  Accordingly, Count X will be dismissed without prejudice and with leave to amend.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion, [ECF No. 44], is **GRANTED IN PART**.  Counts I, II, III, IV, V, VI, VII, IX, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, and XIX are **DISMISSED** *with prejudice*.  *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not [] allow an amendment . . . where amendment would be futile."); *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."); *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) (noting that the Eleventh Circuit "ha[s] never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor [] concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after

having been offered ample opportunity to do so.").  Count X is **DISMISSED** *without prejudice and with leave to amend*.  Plaintiffs shall file a Second Amended Complaint in compliance with this Order on or before **August 6, 2026**.

        **DONE AND ORDERED** in Miami, Florida this 27th day of July, 2026.

                                        _____

                                        **RODOLFO A. RUIZ II**
                                        **UNITED STATES DISTRICT JUDGE**